**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                              |   |                              |
|------------------------------|---|------------------------------|
|                              | * |                              |
| AVIS FOX,                    | * |                              |
|                              | * |                              |
| Plaintiff,                   | * |                              |
|                              | * |                              |
| v.                           | * | Civil Case No.: SAG-21-01972 |
|                              | * |                              |
| STATEBRIDGE COMPANY, LLC, et al., | * |                         |
|                              | * |                              |
| Defendants.                  | * |                              |
|                              | * |                              |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Avis Fox filed this lawsuit against Defendants Statebridge Company, LLC ("Statebridge"), Community Loan Servicing, LLC ("Community"), and Federal Home Loan Mortgage Corporation ("Freddie Mac") for claims relating to their handling of her attempts to modify the terms of her residential mortgage loan. Currently pending before this Court are two motions to dismiss: one filed jointly by Community and Freddie Mac, ECF 31, and one filed by Statebridge, ECF 30. The issues have been fully briefed, ECF 35, 38, 41, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, the motion filed by Community and Freddie Mac will be granted and the motion filed by Statebridge will be granted in part and denied in part.

### I.   BACKGROUND

The following facts are derived from the Amended Complaint, ECF 25, and are taken as true for purposes of evaluating Defendants' Motions. Plaintiff, Mrs. Fox, owns a property in Capitol Heights, Maryland ("the Property"), encumbered by a promissory note and deed of trust. *Id.* ¶ 5. Defendant Freddie Mac is the owner of the mortgage loan on the Property. *Id.* ¶¶ 13, 39.

1

At times relevant to the lawsuit, Statebridge and Community serviced the mortgage loan on the Property. *Id.* ¶¶ 7, 8. The mortgage servicer is responsible for managing the mortgage loan, including collecting payments from the borrower and overseeing and implementing loss mitigation opportunities. *Id.* ¶ 9. Freddie Mac's mortgage servicers "collect a percentage of the payments as a fee for the servicing of the loan." *Id.* ¶ 15. Freddie Mac's mortgage servicers are contractually obligated to follow its Single-Family Seller/Servicing Guide. *Id.* ¶ 16. The Servicing Guide requires servicers to follow a sequence of loss mitigation options when a borrower requires assistance to make payments. *Id.* ¶ 18. Servicers "are eligible for compensation for completing certain alternatives to foreclosure," including repayment or modification options. *Id.* ¶ 19.

In the summer of 2018, Ms. Fox's daughter and her family resided in the Property and made the mortgage payments. *Id.* ¶ 40. As a result of some health issues, however, they did not pay the July, 2018 payment on time. *Id.* ¶ 41. The then-mortgage servicer, Statebridge, did not follow the protocol in Freddie Mac's Servicing Guide to address the missed payment. *Id.* ¶ 43. When Mrs. Fox also missed her August, 2018 payment, she contacted Statebridge to request a repayment plan. *Id.* ¶¶ 45, 46. A Statebridge representative informed her that she had to submit a borrower response package ("BRP") to be reviewed for a loan modification. *Id.* ¶ 47. Under the terms of the Servicing Guide, Mrs. Fox was not yet eligible for a loan modification and should have been offered a repayment plan without submitting a BRP. *Id.* However, as instructed, Mrs. Fox completed the BRP and mailed it to Statebridge. *Id.* ¶ 51.

Mrs. Fox did not make any additional payments while she waited for her BRP to be processed, causing her to fall deeper into default. *Id.* ¶ 52. Soon thereafter, the default grew to a point where loan modification would be required. *Id.* ¶ 49. In September, 2018, Mrs. Fox called Statebridge about a letter that she received from the law firm of Stern & Eisenberg, threatening

foreclosure. *Id.* ¶ 53.  The Statebridge representative told Mrs. Fox that "someone will get back with you," but nobody ever responded. *Id.*

In October, 2018, Mrs. Fox called Statebridge again. *Id.* ¶ 59. The representative told her that she needed to submit a BRP because Statebridge had never received it. *Id.*  Mrs. Fox completed the documentation for a second time. *Id.*  On November 9, 2018, Statebridge asked for additional financial records to complete her application. *Id.* ¶ 60.  Mrs. Fox provided the requested records. *Id.* ¶ 62.  She then called throughout December, 2018 and January, 2019 to follow up on her submission, but never reached a representative. *Id.* ¶ 64.  On February 7, 2019, Mrs. Fox reached a Statebridge representative named Rebecca, who informed Mrs. Fox that her BRP had been received on January 24, 2019. *Id.* ¶ 65.  Rebecca emailed Mrs. Fox a letter dated January 24, 2019, confirming that her package had been received on that date, and representing that "Statebridge will evaluate your loss mitigation application within 30 days from the date your application was received and provide you a decision." *Id.*

Nevertheless, on February 27, 2019, Ms. Fox contacted Statebridge because she still had no response. *Id.* ¶ 66.  Nobody returned her call. *Id.*  On March 21, 2019, Mrs. Fox sent a letter, return receipt requested, to Statebridge. *Id.* ¶ 67.  She did not receive a response or even the return receipt. *Id.*  She later contacted the postmaster and learned that most of her letters to Statebridge had been delivered. *Id.* ¶ 68.  On May 20, 2019, Mrs. Fox received a letter from Statebridge dated May 1, 2019, but not postmarked until May 10, 2019. *Id.* ¶ 69.  The letter offered her a Flex Streamlined Modification Trial Plan ("TPP"). *Id.*  However, in Mrs. Fox's view, the payment amounts were too high and the letter required the first payment by May 1, 2019, nine days before the letter had even been mailed. *Id.* ¶¶ 71–74.  The letter also stated that Mrs. Fox had to notify

Statebridge by May 15, 2019 of her intent to accept the TPP offer, but she did not receive the letter until five days after that deadline. *Id.* ¶ 74.

Mrs. Fox then filed a complaint against Statebridge with the Consumer Financial Protection Bureau ("CFPB"). *Id.* ¶ 75. In response, Statebridge acknowledged a "little difficulty in maintaining communications in this case" but noted that her modification "was approved." *Id.* ¶ 77. Mrs. Fox again began trying to contact Statebridge about the issues with her TPP, and again was passed from representative to representative without reaching anyone who would substantively address her issues. *Id.* ¶¶ 78–83. In September, 2019, Stern & Eisenberg sent Mrs. Fox a Notice of Intent to Foreclose. *Id.* ¶ 88.

On or around October 31, 2019, Community took over the servicing of Mrs. Fox's loan. *Id.* ¶ 89. Just a few months later, in early 2020, the COVID-19 pandemic erupted, and Mrs. Fox was placed into a COVID-19 Forbearance Plan. *Id.* ¶¶ 90–91. She was ineligible, however, for Freddie Mac's COVID-19 Payment Deferral option because her loan was more than two months delinquent. *Id.* ¶ 93. In January, 2021 and May, 2021, Community reviewed Mrs. Fox's file for additional loss mitigation options but did not offer any option that would allow her to retain the Property. *Id.* ¶ 95.

On April 30, 2021, Mrs. Fox sent Community a "Notice of Error/Request for Information" letter ("NOE"). *Id.* ¶ 97. The NOE cited three "servicing errors" that were "made by Statebridge which were being continued by Community including:"

(1) "failing to provide Mrs. Fox with all loss mitigation options pursuant to 12 C.F.R. § 1024.39 including failing to approve her for a repayment plan in or around August and September 2018;"
(2) "failing to make a decision on a completed loss mitigation application within 30 days;" and
(3) "providing incorrect trial period payment amount in her approval letter for a Flex Streamlined Modification Trial Period Plan in May 2019[.]"

4

*Id.* ¶ 98.   Mrs. Fox requested a variety of information and documents from Community and requested that Community take various steps to correct Statebridge's errors.  *Id.* ¶¶ 99–100.  The NOE requested acknowledgement of receipt within 5 days.  *Id.* ¶ 101.

Because she did not receive a response, Mrs. Fox sent Community a follow-up letter on June 15, 2021, and another follow-up letter on June 17, 2021.  *Id.* ¶¶ 101–03.  The follow-up letters noted that Community had failed to conduct a responsible investigation and to respond in writing within 30 business days of receipt of the NOE.  *Id.* ¶ 103.  Community sent a response on July 29, 2021, although the response was not satisfactory to Mrs. Fox.  *Id.* ¶ 105.  Mrs. Fox argues that she continues to face the threat of foreclosure and has incurred economic damages, including attorney's fees and other costs, damage to her credit, and non-economic damages including emotional distress.  *Id.* ¶¶ 106–07.   Finally, Mrs. Fox argues that Statebridge and Community have a history of failing to comply with loan mitigation requirements and the Real Estate Settlement Procedures Act ("RESPA").  *Id.* ¶ 108.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law to state a plausible claim for relief.  *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

6

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

## III.  ANALYSIS

### A.  Community's and Freddie Mac's Motion to Dismiss

Community's and Freddie Mac's Motion to Dismiss, ECF 31, seeks dismissal of Count VI (a claim against Community for violation of RESPA), Count V (a claim against Freddie Mac for breach of contract), and Count VII (a hybrid claim against Statebridge and Community for violation of two Maryland consumer protection statutes). Mrs. Fox consents to the dismissal of Counts V and VII without prejudice, so this Court is left to address the motion as to the RESPA claim against Community only. ECF 38 at 24.

RESPA's purpose is to combat "'certain abusive practices' in the real estate mortgage industry, and to ensure 'that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process.'" *Robinson v. Nationstar Mortg. LLC*, No. 14-cv-3667-TDC, 2019 WL 4261696, at *5 (D. Md. Sept. 9, 2019) (citing 12 U.S.C. § 2601(a)). "RESPA's implementing regulations, codified at 12 C.F.R. §§ 1024.1 to

1024.41 and known as 'Regulation X,' *see* 12 C.F.R. § 1024.1, prescribe additional duties and responsibilities of mortgage servicers under RESPA." *Id.* Ms. Fox's RESPA claim invokes two subsections of "Regulation X," 12 C.F.R. § 1024.35, governing error resolution procedures, and 12 C.F.R. § 1024.36, governing responses to requests for information.

###### i.   "Covered Error" Analysis

Section 1024.35 of Regulation X "allows borrowers to notify mortgage servicers of possible account errors." 12 C.F.R. § 1024.35. It requires servicers to respond to "any written notice from the borrower that asserts an error and that includes . . . information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *Id.* § 1024.35(a). The regulation only applies to the "covered errors" listed in § 1024.35(b). Section 1024.35(b) identifies ten covered errors and contains an eleventh catch-all provision, which applies to "any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11).

Community argues that the errors raised by Mrs. Fox in her NOEs were not "covered errors" under Regulation X, and that it did not have to comply with the response and disclosure requirements. ECF 31-1 at 3–6. Therefore, a preliminary question is whether Mrs. Fox's correspondence identified a covered error.[1]

---

[1] The parties also dispute whether there is a private right of action under 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36, an issue on which other courts have been divided. *See Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *28 (D. Md. Sept. 11, 2020); *see also Poynter v. Rushmore Loan Mgmt. Servs. LLC*, No. 1:20-CV-247, 2022 WL 787870, at *6 (S.D. Ohio Mar. 15, 2022); *Hazelwood v. Bayview Loan Servicing, LLC*, No. 1:20-CV-726, 2021 WL 664059, at *6 (S.D. Ohio Feb. 19, 2021), report and recommendation adopted, No. 1:20CV726, 2021 WL

Mrs. Fox included three errors relating to her mortgage loan in her first NOE: (1) failing to provide her with information about all loss mitigation options, (2) failing to make a decision on a completed loss mitigation application within 30 days, and (3) providing incorrect trial period payment amounts in her approved TPP.  ECF 25 ¶ 98.  She asserts the first and third errors fall under two categories of covered errors under Regulation X: 12 C.F.R. § 1024.35(b)(7) and the catch-all provision, 12 C.F.R. § 1024.35(b)(11).[2]  ECF 38 at 16–21.

Mrs. Fox's first error is a covered error under the regulation.  The "failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by 12 C.F.R. 1024.39," is a "covered error."  12 C.F.R. § 1024.35(b)(7).  The referenced section requires a servicer to, within 45 days of a borrower's delinquency, send the "delinquent borrower a written notice . . . providing a brief description of examples of loss mitigation options that may be available from the servicer." 12 C.F.R. § 1024.39.  In her Amended Complaint, Mrs. Fox asserts that, in August, 2018, Statebridge failed to inform her about a repayment plan that she was eligible for when she asked about such a plan, and incorrectly required her to submit a Borrower Response Packet to be reviewed for a loan modification that she was not yet eligible for.  ECF 25 ¶¶ 46–47.  Statebridge's communication of incorrect information regarding Mrs. Fox's loss mitigation

---

1019936 (S.D. Ohio Mar. 17, 2021) (surveying split cases).  This Court need not reach the issue in light of its determination that, even if a private right of action exists, the failure to timely respond to Mrs. Fox's notification of covered errors did not result in actual damages.

[2] Mrs. Fox does not argue the second error in her NOE is a covered error.  Indeed, the failure to make a timely decision on a loss mitigation application is not one of the ten enumerated covered errors under Regulation X.  12 C.F.R. § 1024.35(b).  And for similar reasons discussed below, such an error does not relate to the "servicing" of Mrs. Fox's mortgage loan and does not fall under the catch-all provision of the regulation.

options, as alleged, is a covered error under Regulation X.  12 C.F.R. § 1024.35(b)(7).  As a result, Mrs. Fox submitted a QWR and Community was required to timely and appropriately respond.

The third error identified by Mrs. Fox, however, does not fall under any of the ten listed "covered errors" or the catch-all provision.  Since the parties completed briefing in this case, the Fourth Circuit issued a published opinion in *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643 (4th Cir. 2022), which appears dispositive of the issue.  In *Morgan*, a residential mortgage customer applied for a loan modification and received a trial payment plan ("TPP").  *Id.* at 647.  The customer made all payments required under the TPP, but the lender still declined to finalize the loan modification, citing the existence of a priority lien on the property.  *Id.*  The customer sent a letter challenging the determination that there was a priority lien and asking for relief.  *Id.*  At issue was whether the alleged error fell under the catch-all provision, which limited errors to those "relating to the servicing of a borrower's mortgage loan."  *Id.* at 649 (citing 12 C.F.R. § 1024.35).  The Fourth Circuit agreed with the lender's position that the alleged error did not relate to the servicing of the loan "because it is merely contesting Appellee's denial of [the customer's] loan modification."  *Id.* at 650.  The Court emphasized that "'servicing' is limited to 'the receiving or making of loan payments' and is not related to 'the terms of the loan and mortgage documents.'"  *Id.* at 651 (citing *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015)).  Thus, the Fourth Circuit summarized, "correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications, do not qualify as QWRs."  *Id.* at 651.

Plaintiff relies on the Second Circuit's decision in *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022), which is both non-binding and readily distinguishable.  In *Naimoli*, the lender, Ocwen, approved the borrower, Ms. Naimoli, for a TPP and stated that if she made the

three required payments she "will receive a modification." *Id.* at 380.  Ms. Naimoli fully complied with the TPP, but Ocwen mishandled the loan documentation and then notified Ms. Naimoli that she was ineligible for modification.  *Id.* at 380–81.  Ms. Naimoli then wrote to Ocwen, citing its error in losing and failing to record her documentation.  *Id.* at 381.  The Second Circuit concluded that Ocwen's errors in document handling related to the servicing of Ms. Naimoli's loan because "the errors Ms. Naimoli identified were correctable without overturning Ocwen's determination regarding her loss mitigation application, because Ocwen could have located and recorded the documents without changing its decision." *Id.* at 384.

In contrast, Mrs. Fox's third complaint of error disputes the payment amount proposed in her TPP.  This was a contractual issue, not a servicing matter.  Unlike *Naimoli*, the corrective steps would require revising Statebridge's proposed TPP made years earlier.  As even the *Naimoli* court acknowledged, "All parties agree that a loan servicer's failure to properly evaluate a borrower for a loss mitigation option is not a covered error under 1024.35(b)."  Accordingly, Mrs. Fox's third error is not related to the servicing of her loan.  Only Mrs. Fox's first alleged error regarding the failure of Statebridge to inform her of all of her loss mitigation options three years prior constitutes a covered error under Regulation X.

### ii.   Damages Under RESPA

The only relief available under RESPA is an award of actual damages, along with additional damages in particularized circumstances.  Thus, allegations that a servicer breached a duty under RESPA without causing any actual harm fails to state a claim under the statute.  *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); 12 U.S.C. § 2605 (f)(1) (making violators liable to individual borrowers for "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern

or practice of noncompliance with the requirements of this section").  Importantly, the actual damages must arise "as a result of" the servicer's alleged violation. 12 U.S.C. § 2605 (f)(1)(A).

To emphasize, Mrs. Fox's RESPA claim only enables her to recover for actual damages resulting from Community's failure to acknowledge receipt and timely respond to her NOE, or as this Court will allow, damages for a "pattern or practice of noncompliance."  RESPA does not enable her to recover damages for Statebridge's failure to correctly inform her of all loss mitigation options three years prior.

Mrs. Fox sent Community her NOE on April 30, 2021.  ECF 25 § 97; ECF 1, Exh. 13.  She alleges that Community failed to acknowledge receipt of this NOE within five days and failed to respond in writing within 30 days, as required by Regulation X.  ECF 25 ¶ 101; 12 C.F.R. 1024.35(d) (requiring the servicer to acknowledge receipt within five days of receiving the NOE); 12 C.F.R. 1024.35(e)(3)(i)(C) (requiring the servicer to respond to the NOE in writing within 30 days).  However, Mrs. Fox notes that a customer service representative from Community did acknowledge receipt of the NOE over the phone on June 15, 2021.  ECF 1, Exh. 14.  Mrs. Fox (through counsel) sent a brief follow-up letter to Community on June 15, 2021, informing Community of their regulatory obligation to timely respond.  *Id.*  A similarly short letter was sent to Community two days later on June 17, 2021.  ECF 1, Exh. 15.  Community responded to Mrs. Fox's NOE in a written letter dated July 29, 2021, providing over 100 pages of requested account documents and explaining, *inter alia*, that Mrs. Fox "was reviewed for all available loss mitigation options at the time."  ECF 25 ¶ 105; ECF 41 at 4.  Mrs. Fox alleges that Community's failure to timely respond to her NOE required her to send two follow-up letters, which forced her to incur additional postage costs, loss of time, aggravation, and attorney's fees.  ECF 25 ¶ 104.

Indeed, there is a purpose to enforcing the deadlines for responding to NOEs.  But the need for a prompt response to Mrs. Fox's NOE is weakened by the multi-year delay between the covered error and the NOE.  "The CFPB has observed that 'it is critical for borrowers to have information regarding available loss mitigation options and requiring that a servicer comply with error resolution procedures as to a borrower assertion that a servicer failed to provide such information is important to ensure that borrowers receive this information.'"  *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 269 (D. Conn. 2017) (quoting Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01, 10742).  Even if Statebridge failed to provide Mrs. Fox with correct information about her loss mitigation options in August or September, 2018, there is not much Community could do to remedy this error three years later.

Mrs. Fox has not alleged how the two-month tardiness of Community's response has caused her additional financial damage with respect to her mortgage loan.  Further, courts "have concluded that an allegation that a debt collector's failure to respond to a QWR letter caused the plaintiff emotional distress, without more, does not establish the causal link necessary to show actual damages."  *Kareem v. PHH Mortg. Corp.*, No. CV 20-7846 (RBK/MJS), 2022 WL 602922, at *6 (D.N.J. Mar. 1, 2022).  Thus, the mere assertion that the two-month delay aggravated Mrs. Fox does not amount to an actionable injury.  Mrs. Fox cannot recover postage costs associated with mailing the NOE because such costs are not incurred "as a result of" Community's failure to comply with RESPA.  12 U.S.C. § 2605(f)(1)(A).  And courts have similarly rejected voluntary postage costs and attorneys' fees associated with sending follow-up letters.  *See, e.g.*, *Robinson v. Bank of Am., N.A.*, No. 21-CV-00110-AJB-DEB, 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022) (collecting cases denying claims based merely on mailing costs); *Fitch v. Fed. Hous. Fin. Agency*, No. 18-CV-214JJM, 2021 WL 4901909, at *6 (D.R.I. Oct. 21, 2021), report

and recommendation adopted, No. CV 18-214-JJM-PAS, 2022 WL 159287 (D.R.I. Jan. 18, 2022) (same).  *But see Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 671 (10th Cir. 2018) (unpublished decision) ("[I]f Bank of America's nonresponse or inadequate response prompted the Fowlers to resend a QWR, then the costs of preparing the subsequent QWR are indeed traceable to the violation."); *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017) (holding that postage costs associated with subsequent mailings were recoverable).  Although some courts have disagreed, this Court is persuaded by the line of cases cited in *Robinson* and finds that the minimal postage costs associated with mailing the follow-up letters do not constitute "actual damages" on which to premise a RESPA claim.

Finally, Mrs. Fox has not presented a "case of a pattern or practice" of noncompliance with RESPA.  12 U.S.C. § 2605(f).  She asserts that Community has committed "at least five separate violations" of the regulations, ECF 38 at 23; however, these alleged separate violations all relate to Community's delayed response to her NOE sent in April, 2021.  "[A] single alleged failure to respond to a QWR is not a pattern or practice entitling [a plaintiff] to statutory damages."  *Asare-Antwi v. Wells Fargo Bank, N.A.*, 855 F. App'x 370, 373 (9th Cir. 2021).  In her Amended Complaint, she points to two other cases brought against Community for violations of RESPA.  ECF 25 ¶¶ 109–10.  Community undoubtedly serves many customers, and the fact that two other borrowers have experienced response delays does not demonstrate a "pattern or practice" of noncompliance.  *Cf. Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720 (8th Cir. 2018) ("To show a pattern or practice, a plaintiff must show that noncompliance with the statute 'was the company's standard operating procedure—the regular rather than the unusual practice.'" (internal citations omitted)).

Thus, Mrs. Fox fails to allege actual damages resulting from Community's alleged failure to timely respond to her notice and fails to allege a pattern of noncompliance. She therefore has not stated a valid RESPA claim against Community and Count IV will be dismissed.

## B. Statebridge's Motion to Dismiss

Statebridge's Motion to Dismiss seeks dismissal of the five counts against it: (1) Count I for violation of the Maryland Consumer Protection Act ("MCPA"); (2) Count II for violation of the Mortgage Fraud Protection Act ("MFPA"); (3) Count III for common law fraud; (4) Count VI for common law negligence; and (5) Count VII for violation of two Maryland consumer protection statutes. Mrs. Fox consents to the dismissal without prejudice of Count VII, leaving four counts to be considered by this Court.

### 1. Count I – MCPA

The Amended Complaint alleges that Statebridge committed both unfair and deceptive trade practices in violation of the MCPA. The elements of such a claim require conduct that was "(a) an unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] [Plaintiff] actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 143 (2007)). The Amended Complaint enumerates eight separate practices or omissions that deceived or mislead Mrs. Fox. ECF 25 ¶ 114. Statebridge argues that Mrs. Fox "has not plead facts to support an inference that she relied on any representation made by Statebridge which is necessary to support a cause of action under the MCPA." ECF 30-1 at 11–12. This Court disagrees. Taking the allegations in the Amended Complaint as true and in the light most favorable to Mrs. Fox, she has pled that she refrained from making additional payments on her mortgage account while she waited for Statebridge to process the BRP it had erroneously represented was essential, causing her account to fall deeper into

default.  ECF 25 ¶¶ 52, 118, 120.  Those facts among others suffice, at this early stage of the litigation, to state a plausible claim for violation of the MCPA.  Mrs. Fox has also sufficiently pled damages resulting from her alleged reliance, including but not limited to damage to her credit score and emotional distress.  ECF ¶¶ 106–07.  Thus, her claims in Count I properly survive dismissal.

### 2.  Counts II and III – Fraud Counts

Mrs. Fox has not adequately alleged fraud because she has not alleged any benefit to Statebridge from its activity, or any other facts which plausibly suggest fraudulent motive.  In the context of the Mortgage Fraud Protection Act, the basis for Ms. Fox's claim in Count II, courts have expressly required that a plaintiff plead "that the defendant gained or attempted to gain something" by making the alleged misrepresentations.  *See, e.g.*, *Crowley v. JP Morgan Chase Bank, N.A.*, Civ. No. RDB-15-00607, 2015 WL 6872896, at *10 (D. Md. Nov. 9, 2015); *see also Zervos v. Ocwen Loan Servicing, LLC*, Civ. No. 11-cv-03757-JKB, 2012 WL 1107689, at *7 (D. Md. Mar. 29, 2012) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d. 776, 784 (4th Cir. 1999)).  Even in the more general fraud context as claimed in Count III, a plaintiff must show that the false representation was made for "the purpose of defrauding the plaintiff."  *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 782 (4th Cir. 2013).  While some cases, then, do not expressly require that the defendant has to gain or attempt to gain something from its conduct, there must be some other facts alleged to make plausible the notion that the defendant is acting with fraudulent purpose.

Here, the Amended Complaint contains no such facts to suggest that Statebridge was purposely acting to defraud Mrs. Fox into defaulting on her loan.  In fact, the Amended Complaint alleges facts that highlight how Statebridge would benefit from retaining Mrs. Fox as a current, paying customer or from successfully enrolling Mrs. Fox in a loss mitigation option.  ECF 25 ¶ 15

("The servicers collect a percentage of the payments as a fee for the servicing of the loan."); *Id.*
¶ 19 ("Services [sic] are eligible for compensation for completing certain alternatives to
foreclosure.  For example, a servicer may receive $500 for a repayment plan, and up to $1,600 for
a loan modification depending on the length of delinquency.").  Nothing alleged in the Amended
Complaint suggests how Statebridge would benefit from Mrs. Fox's loan becoming more
delinquent or reaching foreclosure.  And no other facts alleged suggest that Statebridge was acting
with an intent to defraud Mrs. Fox, other than the conclusory, unsupported invocation of words
like "intentional" or "actual malice."  *See, e.g.*, ECF 25 ¶¶ 130, 135.

Finally, the MFPA claim and the fraud claim are subject to the heightened pleading standards
of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead "with particularity the
circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The circumstances include "'the time,
place, and contents of the false representations, as well as the identity of the person making the
misrepresentation *and what he obtained thereby*.'" *Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776, 784 (4th Cir.1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal
Practice and Procedure: Civil § 1297*, at 590 (2d ed.1990)) (emphasis added).  Because Mrs. Fox's
fraud allegations do not meet those standards, dismissal is appropriate.

**Count VI - Negligence**

In order to prevail on a negligence claim, Mrs. Fox must establish that Statebridge owed her
a duty of care.  *See Jacques v. The First Nat'l Bank of Md.*, 307 Md. 527, 531 (1986).  The
relationship between a lender and a borrower, like Statebridge and Mrs. Fox, is a contractual one,
generally indicating no duty of care on which a tort claim can be premised.  *See Yousef v. Trustbank
Sav., F.S.B.*, 81 Md. App. 527, 568 (Md. Ct. Spec. App. 1990); *see also Am. Tank Transp., Inc. v.
First People's Cmty. Fed. Credit Union,* HAR-94-459, 1995 WL 45676, at *2 (D. Md. Jan. 11,

1995) (dismissing negligence claim because bank did not owe duty of care to its customers).

"Where the failure to exercise due care creates a risk of economic loss only, courts have generally

required an intimate nexus between the parties as a condition to the imposition of tort liability."

*Jacques,* 307 Md. at 534.  Contractual privity alone has not been deemed sufficient to establish an

"intimate nexus," and instead, in these bank/customer contexts, a tort duty only exists in limited

circumstances involving particularly vulnerable parties.  *See Spaulding v. Wells Fargo Bank, N.A.*,

920 F. Supp. 2d 614, 621 (D. Md. 2012) ("The United States Court of Appeals for the Fourth

Circuit has interpreted this exception to apply only to vulnerable parties.") (citing *Lawyers Title

Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293–94 (4th Cir. 2002)).

Mrs. Fox argues, and has alleged in her Amended Complaint, that she is particularly

vulnerable as an "unsophisticated, elderly borrower who was behind on her mortgage" and that

she shares an intimate nexus with Statebridge as a result of contractual privity for her existing

mortgage loan.  ECF 25 ¶¶ 161–62.  Courts have repeatedly rejected such allegations of privity in

the context of borrowers' attempts to assert tort claims against their lenders for consideration of

loan modification applications.  *See, e.g.*, *Ensor v. Wells Fargo Bank, N.A.*, Civ. No. CCB 21-324,

2022 WL 345513, at *3 (D. Md. Feb. 4, 2022) ("[L]oan modifications are not the type of 'truly

extra, out of the ordinary services' that . . . trigger [a duty of care]"); *Maggio v. Cenlar FSB*, Civil

No. CCB-19-1939, 2020 WL 1331930, at *5 (D. Md. Mar. 23, 2020) (holding that "vulnerable"

borrowers seeking a loan modification did not allege the type of special circumstances to support

a negligence claim because the "case presents a typical, arm's-length creditor/debtor relationship

founded on a mortgage loan" (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803

(D. Md. 2013))); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 250–53 (D. Md. 2013)

(determining that plaintiffs failed to state a claim for "negligent processing, or failure to process,

their request for loan modification," *id.* at 252); *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 452 (D. Md. 2013) (dismissing a negligence claim relating to a loan modification agreement because no contractual privity as to the modification existed, only the parties' original mortgage agreement).   Mrs. Fox does not have facts to support contractual privity with respect to a modification or adjustment to her loan contract, and accordingly is subject to the general rule that there is no tort duty between a bank and its customer.   For those reasons, this Court will also dismiss Count VI without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, (1) Community's and Freddie Mac's Motion to Dismiss, ECF 31, is granted and all claims against those defendants are dismissed without prejudice; and (2) Statebridge's Motion to Dismiss, ECF 30, is granted as to Counts II, III, VI, and VII, which are dismissed without prejudice, and denied as to Count I.   A separate Order follows.


Dated: September 21, 2022                                      _____/s/_____
                                                                                          Stephanie A. Gallagher
                                                                                          United States District Judge