## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **AVIS FOX,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No.: 8:21-cv-01972-SAG** |
| **STATEBRIDGE COMPANY, LLC,** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \*

### <u>MEMORANDUM OPINION</u>

Plaintiff Avis Fox ("Plaintiff") brings this action against Defendant Statebridge Company, LLC ("Statebridge") for claims related to Plaintiff's attempts to modify the terms of her residential mortgage loan. Now pending before the Court is Statebridge's Motion for Summary Judgment, ECF 130, which Plaintiff opposed, ECF 133. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, Statebridge's Motion for Summary Judgment will be granted in part and denied in part.

### I.   BACKGROUND

The facts described herein are taken in the light most favorable to Plaintiff as the non-moving party. *See Malinowski v. Lichter Grp., LLC*, 165 F. Supp. 3d 328, 335 (D. Md. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)).

In 1993, Plaintiff Avis Fox purchased a property at 6102 Jost Street, Capitol Heights, Maryland, 20743 ("the Property"). ECF 133-2 ¶ 1 (Fox Aff.). On November 14, 2007, Plaintiff and her now-deceased husband refinanced the Property by executing a Promissory Note and Deed of Trust in the principal amount of $170,000.00 from Washington Mutual Bank, FA. ECF 133-2

at 9–13 (Promissory Note); ECF 133-2 at 15–32 (Deed of Trust).[1] At the time of this refinance, Plaintiff disclosed to a loan officer that her daughter resided at the Property in exchange for payment of the monthly mortgage. Fox Aff. ¶ 2. Plaintiff memorialized this arrangement at the direction of the loan officer and executed a month-to-month lease identifying her daughter as a tenant at the Property. *Id.* ¶ 3; ECF 133-2 at 34–35 (Fox Lease). According to Plaintiff, she and her husband used the loan proceeds to pay off personal debts, purchase used cars for themselves, refinance $59,000 in existing liens on the Property, and repair their principal residence in Bowie, Maryland. Fox Aff. ¶ 4; *see* ECF 130-2 at 2.

In 2016, Statebridge became the servicer of Plaintiff's mortgage on behalf of the Note holder and investor, Federal Home Loan Mortgage Corporation ("Freddie Mac"). Fox Aff. ¶ 6; *see* ECF 133-2 at 38–39 (Assignment of Deed of Trust). As the approved servicer for Plaintiff's loan, Statebridge interpreted and applied Freddie Mac's Single-Family Seller/Servicer Guide ("Servicer Guide"). ECF 133-2 at 42 (Bellanti Dep. 29:16–30:8); *id.* at 45 (48:14–22); *id.* at 51 (138:7–12). Statebridge also collected the $1,116.78 monthly mortgage payment and provided other mortgage loan services under the Note. *See* Promissory Note ¶ 3.

Meanwhile, Plaintiff's daughter, son-in-law, and four grandchildren continued to live at the Property and pay rent in the amount of the monthly mortgage. Fox Aff. ¶ 8. In July, 2018, Plaintiff's daughter and son-in-law became unable to make their rent payments, causing Plaintiff to fall behind on her loan. *Id.* ¶ 9. In August, 2018, Plaintiff called Statebridge to request assistance in the form of a repayment plan in which Plaintiff could make up the missed payments by paying more than the usual payments over the following months. *Id.* ¶ 10. From that call, Plaintiff

---

[1] This Court uses the ECF numbers at the top of the page.

understood that she had to submit a Borrower Response Packet ("BRP") to be considered for any financial assistance and that she should wait to make any further payments until Statebridge reviewed her BRP application. *Id.* ¶¶ 11–12. Plaintiff then completed the BRP application and submitted it to Statebridge. *Id.* ¶ 13.

On January 24, 2019, Statebridge issued a letter acknowledging that it had received Plaintiff's completed BRP application. ECF 133-2 at 84 (January 24, 2019, Letter). That letter indicated that Statebridge "will evaluate [Plaintiff's] loss mitigation application within 30 days from the date [her] complete application was received and [will] provide a decision." *Id.* The letter further informed Plaintiff that Statebridge had "begun the foreclosure process," but that she was "entitled to certain foreclosure protections . . . and [Statebridge] cannot conduct a foreclosure sale before evaluating [her] complete application." *Id.* Plaintiff, however, did not receive the January 24, 2019, Letter until after she called Statebridge on February 7, 2019. Fox Aff. ¶¶ 15–16.

Several months later, Plaintiff received a letter from Statebridge offering her "an opportunity to enter into a Trial Period Plan for a mortgage modification." ECF 133-2 at 86 (May 1, 2019, Letter). The modification would increase the amount of Plaintiff's monthly mortgage payments to $1,669.70, at a fixed interest rate of 4.125%, and extend the loan's term from 30 to 40 years. *Id.* at 86–87. According to the letter, Plaintiff could receive the loan modification if she were to: (1) contact Statebridge by telephone or in writing no later than May 15, 2019, to indicate intent to accept the offer; (2) make an initial Trial Period Plan ("TPP") payment of $1,669.70 by May 1, 2019; and (3) make a second and third payment of $1,669.70 by June 1, 2019, and July 1, 2019, respectively. *Id.* If Plaintiff failed to complete any of these three steps, the TPP offer would expire and Statebridge would not modify Plaintiff's mortgage loan. *Id.*

Plaintiff did not receive this letter until May 20, 2019.[2] Fox Aff. ¶ 17. By that point, her obligations under Steps 1 and 2 were overdue, yet Plaintiff did not agree with the calculation of her revised payments and did not intend to accept the TPP offer without explanation. *Id.* ¶ 22.[3] Plaintiff subsequently filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on May 30, 2019, detailing her recent and unsuccessful attempts to communicate with Statebridge and her refusal to accept its TPP modification offer. ECF 130-8 at 3. Plaintiff amended her CFPB complaint on June 12, 2019, explaining that she had requested a repayment plan around July/August, 2018, that she had made "numerous phone calls to Statebridge" since then without any returned phone calls, and that she did not understand how Statebridge had calculated her new payment and why it was extending her loan term from 30 to 40 years. *Id.* at 5–6.

On July 5, 2019, Statebridge responded to Plaintiff's CFPB complaint. Statebridge admitted "that there has been a little difficulty in maintaining communications in this case," including its own unsuccessful attempts to contact Plaintiff on March 29, 2019 and on May 7, 2019. ECF 133-2 at 100 (Statebridge July 5, 2019, Response). Statebridge also explained that it received Plaintiff's initial loan modification application in November, 2018, requested missing documents on November 9, 2018, and received the documents by January 24, 2019, when Statebridge acknowledged the completed application. *Id.* Statebridge further represented that it reviewed Plaintiff's loan modification application and received investor approval, resulting in the

---

[2] According to Plaintiff, the letter was postmarked on May 10, 2019. Fox Aff. ¶ 17.

[3] Based on a July, 2018 mortgage statement, Plaintiff's regular mortgage payment was $1,332.45, inclusive of principal, interest, taxes, and insurance. ECF 133-2 at 81–82 (July 18, 2018, Mortgage Statement).

May 1, 2019, TPP offer. *Id.* Statebridge then recommended that Plaintiff schedule a call with her "assigned point of contact with Statebridge." *Id.*

Plaintiff contacted Statebridge once again to discuss the loan modification offer, still searching for answers on how Statebridge calculated her monthly payments. Fox Aff. ¶ 24. Plaintiff spoke with a Statebridge representative named Mike, who could not answer her questions about the TPP offer. *Id.* ¶ 25. Plaintiff spoke with another Statebridge representative named Rashard, who also could not answer her questions. *Id.* ¶ 26.

In September, 2019, Plaintiff received a letter with a Notice of Intent to Foreclose. ECF 133-2 at 103–06 (Notice of Intent). The Notice of Intent indicated that Plaintiff's date of default on her mortgage loan payments was July 2, 2018, and that she had to pay $21,080.50 to cure the default. *Id.* at 105. It also instructed Plaintiff to contact a loss mitigation specialist, complete an enclosed loss mitigation application, and mail the completed loss mitigation application and all necessary documentation using an addressed envelope. *Id.* at 105. The Notice of Intent separately instructed Plaintiff that if she had already sent a loss mitigation application to her mortgage company, she was to call her mortgage company to check on the status of that application. *Id.*

On November 1, 2019, Statebridge ceased its role as Plaintiff's mortgage loan servicer, transferring the mortgage loan to Bayview Loan Servicing, LLC ("Bayview"). ECF 133-2 at 108–09 (Transfer of Servicing Notice). On January 7, 2021, Community Loan Servicing, LLC ("Community"), f/k/a Bayview, informed Plaintiff that she did not qualify for reinstatement, a repayment plan, a deferral plan, or a streamline loan modification. ECF 133-2 at 112–13 (Community Letter). At some point before July 17, 2023, Community transferred Plaintiff's loan to RightPath Servicing, the entity currently responsible for servicing Plaintiff's mortgage loan. *See* ECF 130-7.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on August 4, 2021, alleging violations of the Maryland Consumer Protection Act ("MCPA") and the Maryland Mortgage Fraud Protection Act ("MMFPA"), and asserting state law fraud and negligence claims against Statebridge. ECF 1. After Plaintiff amended her Complaint, Statebridge moved to dismiss for failure to state a claim. ECF 30. On September 21, 2022, this Court dismissed Plaintiff's MMFPA, fraud, and negligence claims without prejudice, but allowed her MCPA claim to proceed. ECF 46. Plaintiff amended her Complaint a second time, adding negligent misrepresentation and breach of contract claims against Statebridge. ECF 71. After considering Plaintiff's Second Amended Complaint ("SAC"), this Court allowed Plaintiff's statutory and common law claims to proceed (including her MMFPA claim).[4] ECF 98. As the parties continued discovery, Plaintiff filed a Third Amended Complaint ("TAC") on June 19, 2023. ECF 108. The TAC did not add any new claims against Statebridge. With discovery now complete, Statebridge moved for summary judgment on all counts. ECF 130.

## III.   LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes

---

[4] Plaintiff also included a claim against Statebridge for a violation of the Maryland Consumer Debt Collection Act, but she voluntarily dismissed it prior to this Court's May 10, 2023, Letter Order. ECF 81 at 13.

that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a "scintilla of evidence" in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## IV.   DISCUSSION

The thrust of Plaintiff's TAC is that Statebridge, through of a series of communications and omissions, fraudulently and/or negligently deceived Plaintiff into (1) thinking she was not eligible for a repayment plan; (2) submitting a BRP application that she did not need to submit;

(3) waiting to resume payments she was capable of making while Statebridge reviewed her BRP application; and (4) rejecting the TPP offer based on an incorrectly calculated modified payment, all of which caused Plaintiff financial and emotional harm. According to Plaintiff, Statebridge "had an incentive to engage in the deception" because it could financially benefit from Plaintiff falling "deeper into delinquency and closer to foreclosure." ECF 133 at 4, 14. Plaintiff also asserts that Statebridge breached the terms of the existing Deed of Trust and the implied covenant of good faith and fair dealing in contracts by "preventing [Plaintiff] from becoming current on her loan . . . and failing to comply with its servicing obligations under Applicable Law." *Id.* at 21. Each argument is addressed below.

### A.  Violation of the Maryland Consumer Protection Act (Count I)

Plaintiff's MCPA claim alleges that Statebridge committed unfair, abusive, or deceptive trade practices in the extension of consumer credit or collection of consumer debts. Statebridge argues that Plaintiff is not a "consumer" under the MCPA because Plaintiff took out the mortgage loan to invest in a rental property that was not her principal residence. Plaintiff counters that at the time of the mortgage loan, her daughter resided at the Property without any profit to her, and she sought the mortgage loan for personal, family, and household purposes.

The Maryland General Assembly enacted the MCPA "to set certain minimum statewide standards for the protection of consumers across the State, and to take strong protective and preventative steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 634 (Md. 1995) (internal quotation marks omitted) (quoting MD. CODE ANN. COM. LAW § 13-102(b)(1), (3)). To those ends, the MCPA protects consumers against unfair, abusive, or deceptive trade practices in a broad range of activities,

including in the "extension of consumer credit" and the "collection of consumer debts." MD. CODE ANN. COM. LAW § 13-303. The MCPA defines "consumer credit," and "consumer debts" as credit, debits, or obligations, "which are primarily for personal, household, family, or agricultural purposes." *Id.* § 13-301(d)(1). This Court has instructed that "'personal, household, family, or agricultural purposes' are unambiguous terms that should be given their plain meaning." *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt.*, 95 F. Supp. 3d 886, 909 (D. Md. 2015).

The record in this case reveals a genuine issue of material fact as to whether Plaintiff took out her mortgage loan primarily for personal, family, and household purposes. Plaintiff alleges that she used the loan proceeds "to pay off personal debts, purchase used cars for [her and her husband], refinance the prior loan [on the Property], and repair [their] home." Fox Aff. ¶ 4. The evidence in the record reflects some support for Plaintiff's contention. For example, Plaintiff's loan application indicated that the purpose of the mortgage loan was to refinance existing liens of $59,000 on the Property for "Cash-Out/Home Improvement." ECF 130-2. The month-to-month lease agreement between Plaintiff and her daughter reflects that her daughter resided at the Property and paid monthly rent to Plaintiff to cover the mortgage payment. Fox Lease ¶ 10. Furthermore, Plaintiff avers that at the time she sought loan modification assistance from Statebridge, her daughter, son-in-law, and four grandchildren resided at the Property, supporting an inference that Plaintiff's family lived at the Property for some period of time. Fox Aff. ¶ 8. On these facts, a reasonable factfinder could conclude that Plaintiff took out the mortgage loan primarily for personal, family, and household purposes.

Statebridge argues that Plaintiff's mortgage loan was "commercial in nature" because her loan documents characterized the Property as an investment property rather than Plaintiff's principal residence. ECF 130-1 at 6. These loan documents, however, merely introduce a genuine

dispute of fact as to Plaintiff's primary purpose for the mortgage loan. For example, on the same loan application where Plaintiff indicated that she wanted to refinance the existing liens on the Property for "Cash-Out/Home Improvement," she also marked that the Property will be for "Investment." ECF 130-2. Similarly, Plaintiff indicated in an occupancy affidavit accompanying the loan application that she "shall rent the property" and "will not occupy the Property as my principal residence." ECF 130-4 at 2; *see also* ECF 130-3 at 2 (indicating on a uniform residential appraisal report that the occupant of the Property is a tenant); ECF 130-5 at 2 (indicating that the Property is not her principal residence). What Plaintiff intended when she selected among a limited set of options in a form loan application is not clear from this record.[5] There is also no evidence in the record suggesting that Plaintiff used any of the mortgage loan to conduct commercial or business activity. *See Boatel Indus., Inc. v. Hester*, 550 A.2d 389, 399 (Md. Ct. Spec. App. 1988) (explaining that where the facts do not reveal a primary purpose behind a transaction, "it is the primary use, or the most significant use, to which the [transaction] is put which should be considered as determinative" and finding that a plaintiff could not recover under the MCPA where the record established "substantial business related benefits" from the purchase and use of a yacht that was titled in a corporate name and initially licensed with commercial dealer tags) (citations omitted); *Pasternak & Fidis, P.C.*, 95 F. Supp. 3d at 909 (holding that a law firm did not qualify as a consumer under the MCPA because "the services at issue were . . . to store a law firm's clients'

---

[5] The Court also declines to attribute dispositive significance to evidence that Plaintiff did not reside at the Property. Not only does the MCPA expressly provide that consumer credit, debts, goods, or services include those for primarily family purposes, but this Court has also applied the MCPA to a similar situation, where a plaintiff purchased a home for her daughter, did not intend to reside there, and owned the home throughout the relevant time in question. *See Lawley v. Northam*, Civ. No. ELH-10-1074, 2011 WL 6013279, at *20 (D. Md. Dec. 1, 2011).

documents for the firm, as part of the law firm's business"). The Court will therefore deny Statebridge summary judgment as to Plaintiff's MCPA claim.[6]

## B. Fraud Claims (Counts II and III)

Plaintiff next alleges that Statebridge committed statutory mortgage fraud in violation of the MMFPA and common law fraud by knowingly making deliberate misstatements, misrepresentations, or omissions with the intent to defraud Plaintiff for its own pecuniary benefit. Specifically, Plaintiff claims that Statebridge deliberately misstated, misrepresented, or omitted material facts so that it could charge Plaintiff additional late fees for every month she was delinquent, receive greater loss mitigation incentive fees, and sell Plaintiff's Property at a foreclosure sale for a potential profit. Statebridge argues that Plaintiff has failed to adduce specific evidence of any intent to defraud Plaintiff and that Plaintiff's attempt to impute such intent from purported business incentives rests on "mere speculation," which cannot create a genuine issue of material fact. ECF 130-1 at 7–8 (quoting *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 349 (D. Md. 2011)).

The Court agrees with Statebridge. "In order to state a claim under the MMFPA, the plaintiff must allege facts establishing that the defendant had knowledge of the statement's falsity, and that the defendant gained or attempted to gain something by making the alleged misrepresentations." *Crowley v. JP Morgan Chase Bank*, Civ. No. RDB-15-00607, 2015 WL 6872896, at *10 (D. Md. Nov. 9, 2015). Here, Plaintiff has failed to adduce any evidence suggesting that Statebridge's employees knew that their statements, misrepresentations, or

---

[6] Statebridge did not argue for summary judgment on the other elements of a Plaintiff's MCPA claim, specifically, that Statebridge committed (1) "an unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] [Plaintiff] actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012).

omissions were false, or that the employees deliberately misrepresented or omitted information to Plaintiff for Statebridge's own benefit. Instead, Plaintiff walks the Court through various ways Statebridge "could" financially gain from Plaintiff's deepening delinquency such as by potentially charging her additional late fees for every month she was delinquent or by selling the Property at a profit if the Property sold at foreclosure and if Statebridge repurchased it. ECF 133 at 14. Not only is there no evidence that Statebridge did charge or attempt to charge Plaintiff these additional late fees, but there is also no evidence that Statebridge's telephone representatives made the allegedly false misrepresentations and omissions *intending* for the company to collect additional late fees or profit at a future foreclosure sale. Plaintiff's attempt to impute fraudulent intent simply because "Statebridge could benefit financially," *id.* at 4, is thus speculative and insufficient to withstand summary judgment on her MMFPA claim. *See Casey*, 823 F. Supp. 2d at 349. ("[A] party may not create a genuine issue of material fact through mere speculation, or building one inference upon another.") (citation omitted); *Newsom v. Brock & Scott, PLLC*, 264 A.3d 283, 306 (Md. Ct. Spec. App. 2021) (upholding denial of summary judgment of an MMFPA claim where the evidence showed that a servicer submitted affidavits "that contained a number of erroneous statements, *after* being put on notice of the erroneous nature of the statements") (emphasis in original).

Plaintiff's claim for common law fraud similarly fails. To prevail on common law fraud, a plaintiff must show (1) the defendant made a false representation to plaintiff; (2) its falsity was either known to the defendant or the representation made with reckless indifference for its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff suffered compensable injury as a result of the misrepresentation. *See, e.g.*, *Galante v. Ocwen Loan Servicing, LLC*, Civ. No. ELH-

13-1939, 2014 WL 3616354, at *22 (D. Md. July 18, 2014); *Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008). As noted above, Plaintiff has failed to adduce any evidence suggesting that Statebridge's employees knew any alleged misrepresentation was false, made any misrepresentation recklessly, or made any such representation for the purpose of defrauding Plaintiff. *See Neal v. Residential Credit Sols., Inc*., Civ. No. JKB-11-3707, 2013 WL 428675, at *6 (D. Md. Feb. 1, 2013). Statebridge is therefore entitled to summary judgment on Plaintiff's fraud-based claims.

### C. Negligence and Negligent Misrepresentation (Counts III and VI)

Statebridge argues it is entitled to summary judgment on Plaintiff's negligence claims because it did not owe Plaintiff a duty of care. In opposition, Plaintiff maintains that Statebridge owed her a common law duty of care because the parties shared an "intimate nexus" justifying tort liability based on Plaintiff's status as a vulnerable party. Plaintiff also argues that the MMFPA, Regulation X of the Real Estate Settlement Procedures Act ("RESPA"), and Code of Maryland Regulations ("COMAR") 09.03.06.20 created statutory and regulatory duties of care, and Statebridge's purported breach of those authorities may be evidence of its negligence.

First, the Court notes that it previously dismissed Plaintiff's negligence claims without prejudice because "[t]he relationship between a lender and a borrower, like Statebridge and Mrs. Fox, is a contractual one, generally indicating no duty of care on which a tort claim can be premised." ECF 46 at 17 (citing *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)). An exception to that general rule exists where the parties share "an intimate nexus" that is satisfied by contractual privity and "circumstances involving particularly vulnerable parties." *Id.* at 18 (citing *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 621 (D. Md. 2012)). As the Court explained, however, Plaintiff did not have facts to support contractual privity

with respect to a modification or adjustment to her loan contract, leaving her "subject to the general rule that there is no tort duty between a bank and its customer." *Id.* at 18.

Plaintiff's SAC re-asserted that Statebridge created an intimate nexus "once it undertook to offer [Plaintiff] her loss mitigation assistance," because at that point, Plaintiff "was completely dependent" on Statebridge's "extensive control" over her loan, could not seek out another servicer, and was thus "particularly vulnerable as an unsophisticated, elderly borrower who was behind on her mortgage . . . and . . . rel[ied] on Statebridge to . . . utilize its superior knowledge, skill, and experience when interpreting and implementing the loss mitigation programs available" to her. ECF 71 ¶¶ 105–09. In addition, Plaintiff's SAC newly alleged that Statebridge owed her a duty of care as to RESPA and its enforcing regulation, Regulation X, which requires a servicer to "maintain policies and procedures that are reasonably designed to provide timely and accurate information to borrowers, and properly evaluate loss mitigation applications." *Id.* ¶ 104 (citing 12 C.F.R. § 1024.38(b)(1)-(2)); *see also* ECF 81 (Pl's Opp. to Def's Mot. to Dismiss) at 17–20 (adding arguments that Statebridge owed her duties of care under the MMFPA and COMAR 09.03.06.20). After considering these amendments and arguments, this Court allowed Plaintiff's negligence claims to proceed because she had "adequately alleged the existence of statutory duties" created by the MMFPA, RESPA, and Maryland regulations that are "designed to protect homeowners and federal mortgage loan recipients." ECF 98. The Court did not, however, analyze Plaintiff's renewed allegations regarding a common law duty and will address those first before turning to her statutory arguments.

### i.   Common Law Duty of Care

According to Plaintiff, the vulnerable party exception still exists not only because she is an unsophisticated, elderly borrower who fell behind on her mortgage loan, but also because of

"special circumstances that exist in this case." ECF 133 at 20. Plaintiff principally relies on *Parker v. Columbia Bank* and its progeny, which recognize that "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement," but "such special circumstances *may* exist where the bank knows or has reason to know that the customer is placing [her] trust and confidence in the bank and relying on the bank to counsel and inform [her]." 604 A.2d 521, 532–33 (Md. Ct. Spec. App. 1992) (emphasis added) (internal quotation marks and citations omitted). Such "special circumstances . . . include when [a] lender (1) took on extra services on behalf of the borrowers other than furnishing money or (2) exercised extensive control over the process of [loan] modification." *Ensor v. Wells Fargo Bank, N.A.*, Civ. No. CCB-21-324, 2022 WL 345513, at *3 (D. Md. Feb. 4, 2022) (internal quotation marks omitted) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 418 (Md. 2012)). Plaintiff thus contends that Statebridge's exclusive role as her loan servicer, coupled with its alleged negligence in failing to provide her with early loss mitigation options and proper TPP payment amounts, collectively amount to the kind of special circumstances courts have found to create a tort duty. *See Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 253 (D. Md. 2013) (discussing *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756 (Md. 1986)).

The Court is not persuaded. First, "loan modifications are not the type of 'truly extra, out of the ordinary services'" that courts have found to trigger a tort duty. *Ensor*, 2022 WL 345513, at *3 (quoting *Parker*, 604 A.2d at 534). Additionally, mere offers to consider a loan modification are "among the services normally provided" by a lender for a borrower and even assistance in the loan modification process represents "a typical, arms-length creditor/debtor relationship founded on a mortgage loan." *Id.* at *4 (first citing *Parker*, 604 A.2d at 534, then quoting *Currie v. Wells*

*Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803 (D. Md. 2013)). Second, even though Statebridge "retained a degree of control over how it determined [Plaintiff's] eligibility for mortgage modifications, this control does not rise to the level of 'extensive control' necessary to be considered a special circumstance that gives rise to a duty." *Id*. Indeed, Plaintiff points to obligations, policies, and procedures deriving from Freddie Mac's Servicer Guide as Statebridge's standard of care during the loan modification process, but as in *Ensor*, such guidelines "definitionally remove[] [Statebridge] from the role of exclusive decisionmaker." *Id*. (internal quotation marks and emphasis omitted). Without opining on the specific applicability of the Servicer Guide in this case, the Court adopts the *Ensor* court's finding that another entity "has regulated the method and manner of the interaction between the parties, thus preventing the formation of a fiduciary relationship by special circumstance." *Id.*; *see also Goss v. Bank of Am., N.A.,* 917 F. Supp. 2d 445, 452 (D. Md. 2013). Finally, Plaintiff argues that she was vulnerable because Statebridge provided her erroneous information about her mortgage options and payment amounts. In other words, she argues that the same conduct that created the duty by rendering her vulnerable also constituted the breach of the duty. But the duty must exist independent of the breach absent special circumstances. *See Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 762 (Md. 1986) (explaining how "extraordinary financing provisions" in a loan application and express promises a bank made to borrowers with knowledge of such provisions left the borrowers "particularly vulnerable and dependent upon the Bank's exercise of due care"); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 252–53 (D. Md. 2013) (discussing how a vulnerability must arise independent of any request for loan modification absent the "extraordinary circumstances" in *Jacques*); *accord Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012), *aff'd*, 714 F.3d 769 (4th Cir. 2013).

For these reasons, Plaintiff's negligence claims based on a common law duty cannot survive summary judgment.

### ii.        Statutory Duties of Care

Plaintiff separately argues that Statebridge owed her statutory and regulatory duties under the MMFPA, 12 C.F.R. § 1024.38 of RESPA's Regulation X, and COMAR 09.03.06.20. Under Maryland law, the breach of a statutory or regulatory duty "may be considered some evidence of negligence." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 275 (D. Md. 2015) (quoting *Pahanish v. W. Trails, Inc.*, 517 A.2d 1122, 1132 (Md. 1986)); *see, e.g.*, *Webb v. Green Tree Servicing, LLC*, Civ. No. ELH-11-2105, 2012 WL 2065539, at *6 (D. Md. June 7, 2012); *Paul v. Blackburn Ltd. P'ship*, 63 A.3d 1107, 1130 (Md. Ct. Spec. App. 2013). "Before that breach of statutory duty can be used in that manner, however, three requirements must be met." *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 430 (D. Md. 2014).

> First, the plaintiff must be a member of the class of persons the statute was designed to protect. Second, the injury suffered must be of the type the statute was designed to prevent. Third, the plaintiff must present legally sufficient evidence to demonstrate that the statutory violation was the proximate cause of the injury sustained.

*Id.* (quoting *Pahanish*, 517 A.2d at 1132).

Beginning with the MMFPA, the Court finds that Plaintiff cannot use a purported violation of that statute as evidence of Statebridge's negligence because she has not presented legally sufficient evidence of any statutory violation of the MMFPA. *See Webb*, 2012 WL 2065539, at *8 ("[A] statutory-based negligence action requires the plaintiff to demonstrate a violation of a statute or ordinance.") (internal quotation marks and citations omitted). As the Court explained earlier, Plaintiff has failed to provide any evidence that Statebridge acted knowingly and with the intent to defraud Plaintiff, and she is thus unable to prove that Statebridge violated the MMFPA.

12 C.F.R. § 1024.38 and COMAR 09.03.06.20 present closer questions, but the Court ultimately finds that Plaintiff cannot use purported violations of those regulations as evidence of Statebridge's negligence.

### a.   12 C.F.R. § 1024.38

"In enacting RESPA, Congress aimed to provide 'consumers with greater and more timely information on the nature and costs of the real estate settlement process.'" *Richards v. Servis One, Inc.*, Civ. No. 8:20-cv-03683-PX, 2021 WL 3930130, at *4 (D. Md. Sept. 2, 2021) (quoting *Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 437 (4th Cir. 2020)). "Among other things, RESPA sanctions certain private rights of action and empowers federal and state regulators to enforce its dictates." *Id.* (internal quotation marks omitted) (quoting *Harrell*, 976 F.3d at 437); *see also* 12 U.S.C. §§ 2605(f), 2607(d), 2608(b). 12 C.F.R. § 1024.38 is one such provision. That provision requires a mortgage loan servicer to "maintain policies and procedures that are reasonably designed to achieve certain enumerated objectives" including providing timely and accurate information to borrowers. *Richards v. New Rez, LLC*, Civ. No. ELH-20-1282, 2022 WL 657568, at *19 (D. Md. Mar. 4, 2022) (internal quotation marks omitted) (quoting 12 C.F.R. § 1024.38(a)–(b)); Importantly, 12 C.F.R. § 1024.38 affords individuals no private right of action to enforce the regulation and to obtain a remedy for their injuries. *See, e.g.*, *Richards*, 2021 WL 3930130, at *6; *Best v. Newrez LLC*, Civ. No. GJH-19-2331, 2020 WL 5513433, at *28 (D. Md. Sept. 11, 2020) (quoting Mortgaging Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,818 (Feb. 14, 2013)).

Under Maryland tort law, "[t]he presence or absence of an indication of legislative intent to create a private remedy is a very important factor to be considered by a court in determining whether to recognize a tort duty . . . [but] it is not the only factor." *Bord v. Balt. Cty.*, 104 A.3d

948, 962 (Md. Ct. Spec. App. 2014) (quoting *Erie Ins. Co. v. Chops*, 585 A.2d 232, 237 (Md. 1991)). "Other factors include 'whether the plaintiff is one of the class for whose special benefit the statute was enacted, and whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.'" *Id.* (quoting *Erie Ins. Co.*, 585 A.2d at 237); *see also Webb v. Green Tree Servicing, LLC*, Civ. No. ELH-11-2105, 2012 WL 2065539, at *7 n.8 (D. Md. June 7, 2012) ("The existence of an express or implied private right of action is not necessary to a negligence claim based on a statutory violation.").

Although Plaintiff may be one of the class of persons RESPA and Regulation X intended to benefit, *see Tanasi v. CitiMortgage, Inc*., 257 F. Supp. 3d 232, 273 (D. Conn. 2017), the Court finds that it would be inconsistent with the underlying purposes of 12 C.F.R. § 1024.38 and its legislative scheme to imply a regulatory tort duty on Statebridge. During its rulemaking of Regulation X generally and 12 C.F.R. § 1024.38 specifically, the CFPB considered arguments that "the Bureau and prudential regulators are better positioned to assess and supervise servicers' internal policies and procedures than courts through civil litigation." 78 Fed. Reg. at 10,778. The CFPB ultimately agreed with these sentiments, concluding:

> The Bureau believes that supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38 respectively, would provide robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38. Indeed, the Bureau believes that the Bureau and other Federal regulators have the experience and judgment necessary to evaluate a servicer's compliance with § 1024.38 and to take action against servicers whose operational systems are not reasonably designed to achieve the stated objectives without waiting for evidence of a pattern or practice of undesirable outcomes.

*Id.*

This regulatory history makes clear that the CFPB would not have intended for a jury or this Court to evaluate Statebridge's compliance with or violations of 12 C.F.R. § 1024.38 in the

handling of Plaintiff's loan modification request. *See also id.* (noting that courts could potentially interpret "flexible objectives-based standards inconsistently, which would . . . create[] compliance challenges for servicers"). Yet, this is exactly what Plaintiff seeks by asserting a regulatory duty of care under 12 C.F.R. § 1024.38 to underpin her negligence claims. The Court declines to recognize a tort duty that would be fundamentally inconsistent with the CFPB's intent in enacting 12 C.F.R. § 1024.38.[7] *See also Agomuoh v. PNC Fin. Servs., Grp.*, Civ. No. GJH-16-1939, 2017 WL 657428, at *8 (D. Md. Feb. 16, 2017) ("[N]othing in RESPA imposes a generalized duty of care beyond what the statute already requires of mortgage loan servicers.").

###    b.  *COMAR 09.03.06.20*

For similar reasons, the Court also finds that Plaintiff cannot base a statutory negligence claim on a purported violation of COMAR 09.03.06.20. That state regulation imposes on mortgage loan servicers "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower," MD. CODE REGS. 09.03.06.20, but borrowers also lack the ability to enforce that regulation's requirements, *Zervos v. Ocwen Loan Servicing, LLC*, Civ. No. 1:11-cv-03757-JKB, 2012 WL 1107689, at *6 (D. Md. Mar. 29, 2012) (dismissing breach of duty claim under COMAR 09.03.06.20 because "[e]nforcement of this regulation . . . is committed exclusively to the Commissioner of Financial Regulation") (citations omitted). As that regulatory scheme makes clear, any mortgage lender who violates COMAR 09.06.03.20, or any other related regulation, is "subject to the enforcement provisions of" Section 11-517 of the Maryland Code,

---

[7] In fact, Plaintiff did avail herself of the regulatory enforcement process by filing a consumer complaint with the CFPB, which contacted and directed Statebridge to respond to Plaintiff's consumer complaint. *See* ECF 130-8 at 2–7. Thus, there may be risks of double recovery and/or inconsistent results in situations like this one, where a plaintiff seeks regulatory enforcement against a servicer and later pursues statutory negligence claims in court premised on the same conduct.

Financial Institutions Article. MD. CODE REGS. 09.03.06.17. Section 11-517 gives the Maryland Commissioner of Financial Regulation ("Commissioner") "broad enforcement powers" over mortgage lender regulations "including imposition of civil fines and the issuance of orders to [mortgage] licensees to cease and desist from illegal actions or to take affirmative actions to correct their illegal actions." *Thrasher v. Homecomings Fin. Network*, 838 A.2d 392, 396 (Md. Ct. Spec. App. Md. 2003). For example, the Commissioner may require a violator to pay "restitution of money or property to any person aggrieved by the violation" and may "impos[e] a civil penalty not exceeding $10,000 for each violation." MD. CODE ANN. FIN. INST. § 11-517(c)(1). Because "any person aggrieved" by a violation of COMAR 09.03.06.20 may obtain a remedy through administrative, not judicial, enforcement, it would appear inconsistent with this scheme for a court to create a tort duty allowing plaintiffs to pursue independent redress in court against mortgage lenders for their alleged harms. *See Fangman v. Genuine Title, LLC*, 136 A.3d 772, 797 (Md. 2016) (observing that plaintiffs under a state property regulation still had a remedy to pursue their claims because that regulation provided for criminal penalties for those convicted of violating it); *Paul v. Blackburn Ltd. P'ship*, 63 A.3d 1107, 1140 (Md. Ct. Spec. App. 2013) (holding that a statutory duty existed under a state regulation that established barrier requirements for public pools to protect young children where the history and structure of that regulation "was designed to create a cause of action in tort"), *aff'd*, 90 A.3d 464 (Md. 2014). The Court thus declines to allow Plaintiff to circumvent the regulatory enforcement process by alleging statutory negligence claims against Statebridge based on its purported violation of COMAR 09.03.06.20. *See Zervos*, 2012 WL 1107689, at *6.

For these reasons, Plaintiff's negligence claims based on statutory duties cannot survive summary judgment.

### D.  Breach of Contract Claims (Count V)

Plaintiff's final claim asserts that Statebridge breached the terms of the Deed of Trust and the implied covenant of good faith and fair dealing by (i) preventing her from becoming current on her loan, as she is allowed to do under Sections 19 and 20 of the Deed of Trust, and (ii) failing to comply with "Applicable Law," including the MMFPA, COMAR 09.03.06.20, and 12 C.F.R. § 1024.38.[8]  Statebridge first contests Plaintiff's standing to bring a breach of contract claim, reasoning that her claim is premised on Statebridge's alleged failure to adhere to the Freddie Mac Servicer Guide, and Plaintiff is not privy to the relationship between Freddie Mac and Statebridge. Statebridge also contests Plaintiff's standing to enforce the Deed's incorporation of Regulation X writ large, repeating its earlier argument that Plaintiff's mortgage loan was commercial in nature and thus, falls outside the protections of Regulation X.

The Court concludes that Plaintiff has standing to enforce enumerated obligations in the Deed of Trust, but her claim ultimately fails because the Deed of Trust is devoid of any obligation on the part of a loan servicer to facilitate a loan modification or to do so in the manner Plaintiff sought. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 563 (D. Md. 2012). "[A] court's interpretation of a contract is limited to the four corners of the agreement" and "it is improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are

---

[8] Plaintiff also argues that "a jury could find that Statebridge has not met its servicing obligations as required in Section 20" because "Statebridge acted in direct contradiction to the [Freddie Mac] Servicing Guide." ECF 133 at 24. This Court already dismissed this breach of contract claim to the extent it was premised on Freddie Mac's Servicer Guide. ECF 98.

clear and unambiguous." *Wal-Mart Real Estate Bus. Tr. v. Garrison Realty Invs., LLC*, 657 F.

Supp. 3d 757, 768 (D. Md. 2023) (internal quotation marks and citations omitted).

Here, the Deed of Trust does not contain any provision requiring Statebridge to modify

Plaintiff's loan. Plaintiff points to Section 20 of the Deed of Trust, but that provision governs sales

of the Note and changes in loan servicers—not loan modification obligations. It also states, in

relevant part:

> The Note or a partial interest in the Note (together with this Security Instrument) can be
> sold one or more times without prior notice to the Borrower. A sale might result in a change
> in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the
> Note and this Security Instrument and performs other mortgage loan servicing obligations
> under the Note, this Security Instrument, and Applicable Law. . . . If there is a change of
> the Loan Servicer, Borrower will be given written notice of the change which will state the
> name and address of the new Loan Servicer . . . and any other information RESPA requires
> in connection with a notice of transfer of servicing.

Deed of Trust ¶ 20.

This language does not establish any affirmative duties on the part of Statebridge to issue

a loan modification to Plaintiff, nor can this Court infer that "mortgage loan servicing obligations"

necessarily includes the duty to modify a borrower's loan. *See Ayres v. Ocwen Loan Servicing,*

*LLC*, 129 F. Supp. 3d 249, 279 (D. Md. 2015) ("If a contract is unambiguous, the court must give

effect to its plain meaning and not contemplate what the parties may have subjectively intended

by certain terms at the time of formation.") (citation omitted); *Mortgage Servicing*, BLACK'S LAW

DICTIONARY (11th ed. 2019) (defining mortgage servicing as "[t]he administration of a mortgage

loan, including the collection of payments, release of liens, and payment of property insurance and

taxes"); *compare Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 731–32 (D. Md. 2013) (denying

summary judgment against a loan servicer who had an express, affirmative obligation under a deed

of trust to apply payments it received from the borrower in a specific manner), *with Correll v. Bank*

*of Am., N.A.*, Civ. No. 2:11-cv-477, 2012 WL 348594, at *4 (E.D. Va. Feb. 2, 2012) (observing that a borrower's note and deed of trust did not require a lender to modify the borrower's loan).

Plaintiff's attempt to skirt this fundamental problem by implying a duty of good faith and fair dealing in the Deed of Trust fails for two reasons. First, "[t]he covenant of good faith and fair dealing, implied in all negotiated contracts in Maryland, 'is *limited* to prohibiting one party from acting in such a manner as to prevent the other party from performing his obligations under the contract.'" *Willis v. Bank of Am. Corp., N.A.*, Civ. No. ELH-13-02615, 2014 WL 3829520, at *38 (D. Md. Aug. 1, 2014) (emphasis in original) (quoting *Edell & Assocs., P.C. v. Law Offs. of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001)). This means that the covenant "is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000); *see also id.* ("An implied duty is simply a recognition of conditions inherent in expressed promises."); *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992) ("[T]he duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents."). Because Statebridge is not obligated under the Deed of Trust to modify Plaintiff's loan at her request, she cannot maintain her claim for breach of the implied covenant of good faith and fair dealing. *See Woodrow v. Vericrest Fin., Inc.*, Civ. No. AW-09-1612, 2009 WL 4348594, at *4 (D. Md. Nov. 30, 2009) ("[A] [p]laintiff cannot claim a breach of good faith and fair dealing based on the same alleged conduct.").

Second, the Deed of Trust does not incorporate COMAR 09.03.06.20 or RESPA's Regulation X into the mortgage servicer's obligations into the contract. Plaintiff argues that the Court should read in these statutory and regulatory obligations based on a purportedly broad

definition of "Applicable Law," which the Deed of Trust defines as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well all applicable final, non-appealable judicial opinions." Deed of Trust Definitions(*I*). The boilerplate term "all applicable law," however, "refers to the then-existing body of law that applies directly to the contract in question, or to which the parties are otherwise subject in the performance of their contractual duties and obligations." *Condel v. Bank of Am., N.A.*, Civ. No. 3:12CV212-HEH, 2012 WL 2673167, at *8 (E.D. Va. July 5, 2012) (noting further that courts narrowly construe the phrase "all applicable law" in a contract). By contrast, the term "does not appear to incorporate laws which are not already applicable (even if otherwise relevant) to the parties or their agreement." *Id.* (emphasis omitted). Moreover, "absent clear language to the contrary, courts should not interpret contracts to incorporate future changes to the law." *Id.* (emphasis omitted) (citing cases and 11 WILLISTON ON CONTRACTS § 30.23 (4th ed. 2012)); *see also Bos. Sci. Corp. v. Mirowski Fam. Ventures, LLC*, 133 A.3d 1176, 1197 (Md. Ct. Spec. App. 2016) ("[U]nless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement . . . but laws enacted subsequent to the execution of the agreement are not deemed part of the agreement unless the contractual language clearly indicates such to have been the intention of the parties.") (quoting *Ethyl Corp. v. Forcum-Lannom Assocs., Inc.*, 433 N.E. 2d 1214, 1220 (Ind. Ct. App. 1982)).

Here, the Maryland Department of Labor did not promulgate COMAR 09.03.06.20 until October 24, 2008, almost a year after Plaintiff executed the instant Deed of Trust on November 14, 2007. 2008 MD. REG. TEXT 153987 (Netscan) (Oct. 24, 2008). Similarly, the CFPB did not finalize RESPA's Regulation X until February, 2013. *See* Mortgaging Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,777 (Feb. 14,

2013). While the Court does recognize that the Deed of Trust defines "RESPA" to include the underlying statute and Regulation X "as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter," Deed of Trust Definitions(*P*), the Deed of Trust explicitly refers to RESPA in specific, enumerated obligations and not in the more general catch-all phrase "other mortgage loan servicing obligations," *see id.* ¶ 20 (affirmatively requiring that a new loan servicer must provide the borrower written notice of the change along with "any other information RESPA requires in connection with a notice of transfer of servicing"); *id.* ¶ 3 (requiring adherence to RESPA in the collection of funds for escrow items); *see also Expo Props., LLC v. Experient, Inc.*, 956 F.3d 217, 229 (4th Cir. 2020) ("Under Maryland law, if one contract provision is general in character and the other is specific, the specific stipulation will take precedence of the general, and control it.") (internal quotation marks and citation omitted). Thus, the Court finds that the term "Applicable Law" in Section 20 of the Deed of Trust does not incorporate Regulation X, COMAR 09.03.06.20, or the MMFPA.[9] Accordingly, Statebridge is also entitled to summary judgment on Plaintiff's breach of contract claims.

## V.    CONCLUSION

For the reasons stated above, Statebridge's Motion for Summary Judgment, ECF 130, is GRANTED IN PART as to Counts II, III, V, and VI, and DENIED IN PART as to Count I of Plaintiff's Third Amended Complaint, ECF 108. A separate Order follows.

Dated: December 8, 2023                                                    /s/
_____                          _____
                                                       Stephanie A. Gallagher
                                                       United States District Judge

---

[9] The Court declines to allow Plaintiff to base her contract claims on purported violations of the MMFPA where, as explained above, she cannot demonstrate that Statebridge violated the MMFPA.